567 S.E.2d 523

**The STATE, Appellant,**

v.

**Robert Louis GARRETT, Respondent.**

**No. 3515.**

Court of Appeals of South Carolina.

Heard May 7, 2002.

Decided June 10, 2002.

Rehearing Denied Aug. 23, 2002.

614

Assistant Appellate Defender Aileen P. Clare, of S.C. Office of Appellate Defense, for respondent.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson and Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor C. Kelly Jackson, of Sumter, for appellant.

HEARN, C.J.

Robert Garrett and Arthur Tyrone Davis were jointly indicted and tried for carjacking, possession of a firearm during the commission of a violent crime, criminal conspiracy, and two counts each of kidnaping, assault and battery with intent to kill (ABIK), assault and battery of a high and aggravated nature (ABHAN), and armed robbery. The jury found Garrett guilty of carjacking, two counts of kidnaping, two counts of ABHAN, possession of a weapon during the commission of

a violent crime, and conspiracy. Davis was convicted of two counts ABHAN, possession of a weapon, and conspiracy. After reading the verdicts and hearing arguments, the trial judge granted Garrett's new trial motion. We reverse and remand for sentencing.

## FACTS

In April 1997, Paul Anthony France and Joseph Michael Chiappone were stationed together at Shaw Air Force Base. One evening, they went to a car wash to install fog lights on France's car. While working on the car, Chiappone noticed a "blue or dark colored Bronco or Blazer" slowly passing the car wash. Shortly after that, a man appeared and pointed a gun at Chiappone, then pushed him to the ground. Chiappone's attacker went through his pockets and took several items, including his wallet. Chiappone did not see his attacker's face, but he noticed another set of feet on the other side of the car. As Chiappone was attacked, France was pulled from the car and pushed to the ground. An assailant placed his foot on France's neck and another rifled through his pockets, taking his wallet among other items.

After robbing Chiappone and France, the assailants forced them into the trunk of France's car. One of the assailants drove France's car away from the car wash, and the other got into a different vehicle. From inside the trunk, France used a lighter to manipulate his tail lights in an attempt to signal for help. Unbeknownst to France, the car behind them was the second assailant. The second vehicle then rammed into the back of France's car.

The individual driving France's car stopped in a field along with two other vehicles. The assailants questioned Chiappone and France about the tail lights. When neither of them responded to the questioning, they were forcibly removed from the trunk, separated, beaten by at least two assailants each, forced to remove their clothing, and then forced back into the trunk.

As they drove, the victims could feel France's car colliding with the other vehicles. France's car became disabled. The victims were again taken out of the trunk and forced to the ground. France heard several voices, and he guessed from

the assailants' conversation that two of them wanted to leave immediately and one wanted to shoot them. The assailants urinated on the victims, then shot them in the buttocks. One of them threatened to return in five minutes to "finish off" the victims, and the assailants drove away in the sports utility vehicle. France and Chiappone found the keys to France's car and drove to a nearby home where a resident called the police and an ambulance.

Although neither victim could identify their assailants, police began an investigation and eventually identified Garrett as a suspect.[1] Garrett was tried with Davis as a co-defendant.

At trial, Desmond Cunningham testified he was with Garrett, Davis, and Andre China on the night of the crime. The four men were at Garrett's home and decided go out. Cunningham and Davis rode in a black Blazer. Garrett and China left in Garrett's car. Cunningham saw Garrett and China approach the victims and force them into France's trunk. As they left the car wash, China drove the sedan, Garrett drove France's car, and Cunningham and Davis followed in the Blazer. After Cunningham noticed the tail lights of France's car go out, he signaled Garrett who pulled over and got out. China, who had driven ahead, returned and exited the car. Garrett and China then pulled the victims from the trunk and "started beating them." Cunningham testified Garrett had a gun in his hand. Davis got out of the Blazer and went into a field with Garrett, China, and the victims. The three assailants continued beating the victims, made them undress, then forced them back into the trunk.

As the group continued driving the three vehicles, Garrett began causing France's car to hit the Blazer. When France's car began smoking heavily, Garrett and the other assailants pulled over and stopped. Garrett got out of France's car carrying a handgun. Davis told Cunningham he was going to shoot the victims and exited the sports utility vehicle with a rifle. Cunningham drove away before any shots were fired.

---

1. During the same time period, Garrett's landlord began ejectment proceedings. An officer assisting in the ejectment entered Garrett's residence and saw materials connected with this crime. Police officials obtained a search warrant and recovered several compact discs later identified as having been stolen from France's car during the incident and a box containing bullets similar to the one recovered from France.

Davis did not testify at trial; however, his redacted statement to law enforcement officials was offered into evidence. The statement, which implicated Davis, China, Cunningham, and "another guy" in the crime, was admitted over Davis's objection. Garrett did not initially object to the admission of the statement; however, he unsuccessfully moved for severance before the statement's publication to the jury.

Immediately after the statement was published to the jury, Garrett renewed his motion for severance and moved for a mistrial, asserting "it is readily apparent that we have conflicting defenses" and arguing the statement was inherently prejudicial because of the testimony implicating Garrett as the "other guy." Davis also sought a severance and joined in Garrett's motion for mistrial. The trial judge took the matter under advisement, but ultimately denied the motions.

After the verdicts, Davis moved for a new trial, arguing that the evidence was insufficient to sustain the jury's verdict and Davis was prejudiced by the court's failure to sever the trials because the testimony at trial implicated Garrett more strongly than Davis. Garrett adopted Davis's motion, stating that his most compelling argument was the refusal of the trial judge to grant the prior motion for severance and adding that the verdicts were "truly and ridiculously inconsistent." The trial judge denied Davis's motion for a new trial, but granted Garrett's motion, reasoning in part:

> It's almost like [the jury] used the hand of one is the hand of all on Mr. Garrett, but they didn't use the same theory with Mr. Davis. . . . I think with Mr. Garrett, I don't have any choice but to give him the opportunity to have a new trial on the case because of the disparity of the results of the two defendants. As I indicated, Mr. Davis was convicted of matters facing as much as 30 years. And again, in essence, the jury did not convict him of matters of the two shootings, which would have been 40 years between those. And yet they did convict Mr. Garrett of offenses that would have been at least 70 or 80 or maybe 90 years. With that in mind, there's too much disparity between the two.

The trial judge also found that although the solicitor was "correct legally" on the motion to sever, the joint trial "caused

Mr. Garrett to be prejudiced by some of the things the way they worked out." The State now appeals.

## DISCUSSION

On appeal, the State argues the trial judge erred in granting Garrett's motion for a new trial because he relied on an incorrect legal theory. We agree.

Generally, the grant or refusal of a new trial is within the trial judge's discretion and will not be disturbed on appeal without a clear abuse of that discretion. *State v. Smith*, 316 S.C. 53, 55, 447 S.E.2d 175, 176 (1993). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *State v. Hughes*, 346 S.C. 339, 342, 552 S.E.2d 35, 36 (Ct.App.2001).

Here, the trial judge granted Garrett a new trial because "too much disparity" existed between the verdicts against Garrett and Davis. In so finding, he ostensibly assumed a legal prohibition against inconsistent verdicts in criminal cases. Our supreme court has abolished the rule prohibiting inconsistent verdicts in criminal cases. *State v. Alexander*, 303 S.C. 377, 383, 401 S.E.2d 146, 150 (1991). Moreover, these verdicts are not inconsistent. The jury simply found Garrett guilty of more offenses than his co-defendant Davis. The logic applied in *Alexander* contemplates inconsistent verdicts when multiple offenses are submitted to the jury, not when the jury returns disparate results for co-defendants. Because the grant of a new trial was controlled by an error of law, we reverse.

Even assuming, as Garrett urges in his brief, that the trial judge based the grant of a new trial not on a theory of inconsistent verdicts, but on a lack of evidence to support the verdicts, the ruling is nevertheless an abuse of discretion. If there is no evidence to support a conviction, we should uphold an order granting a new trial. *State v. Smith*, 316 S.C. at 55, 447 S.E.2d at 176. However, if competent evidence supports the jury's verdict, the trial judge may not substitute his own judgment for that of the jury and overturn that verdict. *State v. Miller*, 287 S.C. 280, 283, 337 S.E.2d 883, 885 (1985).

Here, the testimony of France, Chiappone, and Cunningham, considered with Davis's redacted statement and the evidence police gathered from Garrett's apartment, presented ample evidence to support the jury's guilty verdicts. That the jury could have convicted Davis on all of these charges under the "hand of one is the hand of all" doctrine does not affect the sufficiency of the evidence to support the verdict against Garrett.

We also reject Garrett's contention that the trial judge's grant of a new trial should be affirmed because it was partially based on the earlier failure to grant a severance. He asserts the motion for severance should have been granted due to the prejudice created by Davis's statement and that a new trial was necessary to correct that prejudice. We disagree.

Motions for severance are addressed to the trial judge's discretion. *State v. Nichols,* 325 S.C. 111, 122, 481 S.E.2d 118, 124 (1997). As co-defendants, Garrett and Davis were not entitled to separate trials as a matter of right. *State v. Dennis,* 337 S.C. 275, 281, 523 S.E.2d 173, 176 (1999). "A severance should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of a co-defendant or prevent the jury from making a reliable judgment about a co-defendant's guilt." *Hughes v. State,* 346 S.C. 554, 559, 552 S.E.2d 315, 317 (2001).

Generally, admission of a statement made by a non-testifying co-defendant and implicating the defendant violates the Confrontation Clause and is inadmissible. *State v. Holmes,* 342 S.C. 113, 118, 536 S.E.2d 671, 673 (2000). However, such a statement is admissible against the confessor in a joint trial if references to the co-defendant are redacted so as not to implicate the co-defendants. *Id.* at 119, 536 S.E.2d at 674. Davis's statement was redacted to omit specific mention of Garrett and was limited in scope to events occurring the night of the crime in question. Moreover, the trial judge issued a curative instruction in his charge that Davis's statement should only be considered against Davis. Because the statement was redacted and a curative instruction given, we find there was no violation of the Confrontation Clause even given the State's other evidence indicating Garrett was the

"other guy". *See State v. Evans,* 316 S.C. 303, 307, 450 S.E.2d 47, 50 (1994) (holding co-defendant's statement admissible because "the statement did not 'on its face' incriminate [defendant], although its incriminating import was certainly inferable from other evidence that was properly admitted against him").

For the foregoing reasons, we reverse the trial judge's grant of a new trial and remand for sentencing.

**REVERSED AND REMANDED.**

HUFF and HOWARD, JJ., concur.