642 S.E.2d 582

**The STATE, Respondent,**

v.

**James Nathaniel BRYANT, III, Appellant.**

**No. 26278.**

Supreme Court of South Carolina.

Heard Jan. 3, 2007.

Decided Feb. 27, 2007.

Rehearing Denied April 4, 2007.

Deputy Chief Attorney for Capital Appeals Robert M. Dudek and Appellate Defender Aileen P. Clare, both of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, all of Columbia, and Solicitor John Gregory Hembree, of Conway, for Respondent.

Chief Justice TOAL:

This is an appeal from a capital sentencing proceeding in which the trial court sentenced James Nathaniel Bryant, III ("Bryant") to death. Bryant appeals claiming that the trial court erred in 1) failing to require that jurors be physically present during jury selection; 2) failing to order the State to produce Bryant's prison records pursuant to *Brady v. Maryland* and Rule 5, SCRCrimP; and 3) failing to admit the defense expert's opinion testimony that the death penalty was more merciful than a sentence of life without parole. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In June 2000, Cpl. Dennis Lyden of the Horry County Police Department ("Cpl.Lyden") was placing Bryant under arrest for driving with a suspended license when Bryant suddenly turned and wrestled Cpl. Lyden to the ground. During the course of the struggle, Bryant managed to obtain Cpl. Lyden's flashlight and pistol magazine from the officer's duty belt and used them to severely beat Cpl. Lyden about the head. After beating the officer unconscious, Bryant took Cpl. Lyden's pistol from his holster and shot him in the head at close range. Bryant drove off, taking the pistol and the pistol magazine with him and leaving Cpl. Lyden's body where it had fallen. After an extensive manhunt, Horry County law enforcement apprehended Bryant the next day.

A grand jury indicted Bryant for murder and armed robbery. Bryant's first issue on appeal involves the jury selection and capital *voir dire* beginning in September 2004.[1] During jury selection, the parties individually examined a total of

---

1. The 2004 jury selection was for Bryant's second trial on these charges. This Court reversed Bryant's 2001 conviction and death sentence in *State v. Bryant*, 354 S.C. 390, 581 S.E.2d 157 (2003), on the basis that law enforcement's contact with jurors' family members compromised Bryant's right to a fair and impartial jury.

sixty-seven jurors divided into thirteen panels. During individual *voir dire,* the parties inquired to the court about the method of jury selection. The court replied that jurors would be called for striking in the same order they had been qualified and that jurors would be brought before the parties to view before striking. The trial court eventually qualified forty-three potential jurors for service.

During the selection process, counsel for Bryant requested that the jurors be redrawn before being presented for striking. The trial court agreed to the request, but announced that instead of physically appearing for final jury selection, the parties would note their selections on a paper list of the jurors in the revised order based on their recollections from individual *voir dire* ("paper strikes"). Bryant's counsel objected to this method of jury selection claiming that because they had counted on physically viewing the jurors, counsel had not taken sufficient notes during *voir dire* to adequately exercise paper strikes. The court assured the defense that they would be given a chance to review their notes, juror sheets, and information forms, and reminded counsel that they had extensively interviewed each juror the week before. When counsel continued to object to paper strikes, the court offered them a chance to withdraw their request to have the jurors redrawn and instead conduct jury selection as originally planned. Counsel for Bryant declined this offer and jury selection proceeded with the jurors being redrawn and the parties exercising paper strikes.

The trial court initially addressed the issue in Bryant's second claim on appeal in a pre-trial motion to compel. During the motion hearing, Bryant claimed that the State was withholding certain discoverable documents believed by Bryant to be in the custody of the South Carolina Department of Corrections (SCDC). The court determined that the State had largely complied with Bryant's discovery requests, finding no reason not to believe the State when it claimed that certain documents being requested did not exist. Where the existence of a particular document was unclear, the trial court ordered the State to offer a definitive answer as to whether or not the documents existed.

The issue of document disclosure arose again at the conclusion of the guilt phase of the proceedings. Just prior to the start of the sentencing phase, the court asked if any matters needed to be further addressed. Neither party requested any further hearing at that point. However, during the sentencing phase of the proceedings, the defense requested an *in camera* hearing on the State's failure to produce the same documents at issue in the pre-guilt phase motion to compel. Reviewing the list of classes of documents Bryant claimed the State had failed to produce, the trial court again found no indication that the State had produced incomplete documents, or failed to produce any documents that in fact existed. The court offered Bryant a chance to make a motion for continuance to which counsel for Bryant responded, "no."

The next day, just before the defense called their last witness, Bryant's counsel moved for a continuance based on the State's failure to turn over the same SCDC records at issue in previous *in camera* discussions. The court denied the motion for a continuance, finding once again that what records existed had been provided, and that even if records the State claimed were non-existent did actually exist, they would not prejudice Bryant's case.

The trial court addressed the SCDC documents a final time when the defense moved for a new trial "based on the State's noncompliance with the discovery rules and the Court's denial of our motion for a continuance." The court denied the motion noting that the issue had been dealt with "extensively" and reiterated its findings made throughout the trial that some of the documents were in the possession of the defense; the alleged contents of other "missing" documents had been stipulated to; and there had been no showing of prejudice due to the absence of the documents.

Bryant's third claim on appeal involves the testimony of Lorita Whitaker ("Whitaker"), an expert in clinical social work and human behavior in prison, who testified for the defense during the sentencing phase on the dismal conditions of prison life. When asked on direct if it was her opinion that prison was a pretty miserable place, she answered, "Some people feel that the death penalty is more merciful than life without parole." The court sustained the State's prompt objection that the expert was "getting into the ultimate issue."

At the conclusion of the sentencing proceeding, the jury recommended Bryant be sentenced to death. This appeal followed and Bryant raises the following issues for review:

I. Did the trial court deny Bryant's constitutional right to a fair trial by an impartial jury by refusing Bryant's request to have the jurors physically present during jury selection?

II. Did the trial court deny Bryant a fair sentencing proceeding by refusing to order the State to produce Bryant's prison records?

III. Did the trial court err in refusing to allow Bryant's expert witness to opine that some people feel the death penalty is more merciful than a sentence of life without parole?

### STANDARD OF REVIEW

In criminal cases, an appellate court reviews errors of law only and is bound by the factual findings of the trial court unless clearly erroneous. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). The conduct of a criminal trial is left largely to the sound discretion of the trial judge, who will not be reversed in the absence of a prejudicial abuse of discretion. *State v. Bridges*, 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982). An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law. *State v. Garrett*, 350 S.C. 613, 619, 567 S.E.2d 523, 526 (Ct.App.2002).

### LAW/ANALYSIS

### I. Jury selection

Bryant argues that the trial court erred in refusing to allow the jurors to be physically present during jury selection. Bryant claims the alleged error substantially impaired his ability to exercise peremptory strikes in a meaningful manner and therefore deprived him of his constitutional guarantee of a fair trial by an impartial jury. *See* U.S. Const. Amend. VI; S.C. Const. art. I, § 14. We disagree.

Peremptory strikes are not constitutional rights. They are creatures of statute and "a means to achieve the end of an impartial jury." *State v. Potts*, 347 S.C. 126, 130, 554 S.E.2d 38, 40 (2001) (quoting *Ross v. Oklahoma*, 487 U.S. 81,

88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)). Therefore, a defendant seeking to overturn a guilty verdict based on the way in which peremptory challenges were exercised must show that the statute granting him peremptory challenges was violated or that the jury which tried him was not impartial. *Id.* at 131, 554 S.E.2d 38, 554 S.E.2d at 40.

S.C.Code Ann. § 14–7–1100 (Supp.2005) provides:

In impaneling juries in criminal cases, the jurors shall be called, sworn and impaneled anew for the trial of each case, according to the established practice.

Bryant argues that the trial court violated the statute granting him peremptory challenges because striking jurors on paper without physically viewing the jurors was not an "established practice" of jury selection.

■ Because a trial court is given enormous discretion in conducting a criminal trial, we may logically conclude that "established practice" does not refer to only one method of impaneling a jury. Although not the most common method of jury selection in criminal trials, paper strikes are often used in this jurisdiction and their use has been held to be valid. *See Potts,* 347 S.C. 126, 554 S.E.2d 38 (upholding the use of paper strikes by a criminal defendant in magistrate's court who claimed the use of paper strikes violated his right to personally confront potential jurors). Because § 14–7–1100 is a blanket rule applicable in all criminal cases, this Court will not begin injecting judicial exceptions into the statutory scheme by holding that the paper strike method is only an "established practice" in non-death penalty cases.

■ Furthermore, there is no evidence that Bryant did not receive a fair trial by an impartial jury. The record reveals a thorough screening process with over 800 pages of capital *voir dire* consisting of individual examination of each juror by defense counsel. Additionally, when counsel for Bryant indicated they were unprepared for the paper strike method, the trial court granted the defense more time to review their notes prior to beginning the striking process and promised to give counsel extra time to decide on a strike during the procedure.

Additionally, the record shows that Bryant affirmatively chose to forego the physical viewing of jurors and proceed with the paper strike method as part of a strategic move to generate a strike list more beneficial to the defense. While

the parties initially agreed to view jurors by calling them forward in the order they were qualified, counsel for Bryant later requested that the jurors be redrawn. Although the solicitor did not object to a redraw, the trial court noted a disadvantage to the State in granting Bryant's request. Therefore, the court allowed the jurors to be redrawn, but announced that by proceeding in this manner, the parties would strike the jurors on the paper list instead of viewing the jurors in person. Upon objection by defense counsel to the use of paper strikes, the trial court gave Bryant the opportunity to withdraw his request to have the jurors redrawn and proceed with the original plan to view the jurors in the order they were qualified. Bryant's counsel refused the trial court's offer, indicating to this Court that counsel for Bryant clearly recalled enough about the jurors to know that a redraw would be more beneficial to their strategy than proceeding in the original order. Without more to substantiate a claim of prejudice, Bryant may not now claim that the trial strategy he opted for warrants a new trial. *See State v. Babb*, 299 S.C. 451, 455, 385 S.E.2d 827, 829 (1989) ("[A] party cannot complain of an error which his own conduct has induced.").

Because the use of paper strikes did not deprive Bryant of a fair trial by an impartial jury, we hold that the trial court did not err in refusing to allow jurors to be present during jury selection.

## II. Discovery of Bryant's SCDC records

Bryant argues that the trial court's failure to order the State to turn over SCDC documents after hearing Bryant's pre-guilt phase motion to compel denied Bryant a fair sentencing proceeding. Bryant also argues that the trial court's subsequent denial of a motion for continuance and a motion for a new trial, both based on the State's refusal to turn over the SCDC documents, denied Bryant a fair sentencing proceeding. We disagree.

■■ Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State must disclose evidence that is favorable to the accused if the evidence is material to either guilt or punishment. Defendants making a claim under *Brady* must demonstrate that 1) the evidence was favorable to the defense; 2) it was in the possession of or known to the prosecution; 3) it was suppressed by the prosecution; and 4)

it was material to guilt or punishment. *Gibson v. State*, 334 S.C. 515, 524, 514 S.E.2d 320, 324 (1999). Similarly, under Rule 5, SCRCrimP, criminal defendants are entitled to their statements, criminal records, and any documents or tangible objects material to the preparation of their defense or intended for use by the prosecution.

Bryant sent a discovery request to the State requesting that his prison records be handed over as *Brady* and Rule 5 material. These records included: classification reports, behavioral reports, visitation reports, counseling records, work records, "shakedown logs," cell inspection reports, and seminar records. The trial court addressed Bryant's *Brady* and Rule 5 requests a total of four times during the trial—in a pre-guilt phase motion; in an *in camera* hearing during the sentencing phase; in a motion to compel at the close of the defense's argument in the sentencing phase; and in a motion for a new trial. Each of the four times Bryant raised the issue of the "missing" classes of documents supposedly accessible to SCDC and the State, the trial judge conducted a thorough examination into the nature of the requested documents, why the documents were necessary to Bryant's defense, and the State's reasons for not producing the documents.

In the instant case, the trial court's findings and conclusions as to each class of documents are clearly supported by the record and function to negate one or more of the elements required to make a claim under *Brady*. Specifically, the trial court found that 1) the classification reports, behavioral reports, and counseling records had been handed over to Bryant by the State; 2) the absence of visitation reports, work records, cell inspection reports, and shakedown logs did not prejudice the defense—a finding that the defense acknowledged to be true; and 3) the visitation reports, work records, shakedown logs, and cell inspection reports did not exist. Likewise, these findings negate the substantive requirements of Rule 5, SCRCrimP, which requires that the documents requested be "material" to the preparation of the defense.

Moreover, Bryant's acknowledgment to the trial court that the absence of certain documents would not be prejudicial to the defense goes squarely against Bryant's contention in this appeal. If Bryant conceded that the court's ruling was

not prejudicial, he may not later assert that ruling denied him a fair trial. *See State v. Whipple,* 324 S.C. 43, 51, 476 S.E.2d 683, 687 (1996) (by proceeding to trial after affirmatively stating "the defense is ready," a defendant waived his right to complain he was given inadequate time to preview discovery materials).

▮ Bryant's claim is essentially grounded in the last-minute turnover of records by SCDC to Bryant's counsel the night before the trial. We note that this Court does not condone such behavior, and we emphasize the importance of conscientiously honoring the requirements of *Brady* and Rule 5, SCRCrimP.[2] However, the acquisition of requested documents at the last minute is not uncommon in the practice of law and, in this case, is not grounds for a new trial in light of the trial court's findings and the parties' stipulations with respect to the various documents.

Accordingly, we hold that the trial court did not abuse its discretion in ruling on Bryant's various *Brady* and Rule 5 motions.

### III. Expert witness testimony

Bryant argues that the trial court erred in refusing to allow Bryant's expert witness to opine that the death penalty was more merciful than a sentence of life without parole. We disagree.

▮ At trial, Bryant called Lorita Whitaker, an expert in clinical social work and "human behavior in prisons." While testifying on direct examination on the dismal conditions of prison life in general, Whitaker stated that "some people feel

---

2. Specifically, we are concerned that the solicitor had to resort to subpoenaing SCDC in September 2004 in order to obtain records requested from SCDC pursuant to Bryant's *Brady* and Rule 5 motions filed in June 2004. Furthermore, because SCDC did not promptly and fully comply with the solicitor's subpoenas, the solicitor had to make repeated phone calls and visits to SCDC in order to acquire the requested records. The situation ultimately required a court order directing SCDC to immediately provide the parties with affirmative responses as to the whereabouts and/or existence of certain records requested by Bryant. The record provides no reason for SCDC's delayed handling of the matter and we issue this reminder that state agencies are no different from the solicitor in their obligations to comply with the requirements of *Brady* and Rule 5.

that the death penalty is more merciful than life without parole." The State immediately objected to Whitaker's statement and the trial court sustained the objection. Defense counsel immediately proceeded to his final question with no contemporaneous objection to the trial court's ruling. Because the issue was not raised to and ruled on by the trial court, the admissibility of Whitaker's statement is not preserved for appeal. *See State v. Moore*, 357 S.C. 458, 593 S.E.2d 608 (2004).

The circumstances of this case are nearly indistinguishable from those in our recent opinion in *State v. Bowman*, 366 S.C. 485, 623 S.E.2d 378 (2005), where although the admissibility of testimony on prison conditions had not been preserved for review, this Court warned:

We take this opportunity . . . to caution the State and the defense that evidence presented in a penalty phase of a capital trial is to be restricted to the individual defendant and the individual defendant's actions, behavior, and character. Generally, questions involving escape and prison conditions are not relevant to the question of whether a defendant should be sentenced to death or life imprisonment without parole. We emphasize that how inmates, other than the defendant at trial, are treated in prison . . . is inappropriate evidence in the penalty phase of a capital trial. We admonish both the State and the defense that the penalty phase should focus solely on the defendant and any evidence introduced in the penalty phase should be connected to that particular defendant.

*Id.* at 498–499, 623 S.E.2d at 385. We reiterate this admonishment in our opinion today and remain firm in our view that testimony seeking to portray life imprisonment as preferable to capital punishment is improper, particularly where, as here, the expert's testimony did not focus specifically on the defendant, but on prison conditions generally.

## PROPORTIONALITY REVIEW

As required, we conduct a proportionality review of Bryant's death sentence. S.C.Code Ann. § 16–3–25(C) (2003). The United States Constitution prohibits the imposition of the death penalty when it is either excessive or disproportionate in light of the crime and the defendant. *State v. Copeland*, 278 S.C. 572, 590, 300 S.E.2d 63, 74 (1982).

In conducting a proportionality review, we search for similar cases in which the death sentence has been upheld. *Id.;* S.C.Code Ann. § 16–3–25(E) (2003).

After reviewing the entire record, we conclude that the sentence in this case was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, a review of similar cases illustrates that imposing the death sentence in this case would be neither excessive nor disproportionate in light of the crime and the defendant. *See State v. Hughes,* 336 S.C. 585, 521 S.E.2d 500 (1999) (holding that the death penalty was warranted where defendant killed a police officer performing a routine traffic stop); *State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805 (2001) (holding that death penalty was proper where defendant killed the driver of armored van during armed robbery of the vehicle); *and State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991) (holding that the death penalty was proper where the defendant shot a state trooper six times after being stopped for erratic driving).

## CONCLUSION

For the foregoing reasons, we affirm Bryant's conviction and death sentence in accordance with the trial court's decision.

MOORE, BURNETT, JJ., and Acting Justices JAMES W. JOHNSON, JR., and L. CASEY MANNING, concur.