**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Filiberto Garcia Campos, Appellant.

Appellate Case No. 2015-001293

_____

Appeal From Lexington County
Thomas A. Russo, Circuit Court Judge

_____

Unpublished Opinion No. 2018-UP-100
Submitted February 9, 2018 – Filed March 7, 2018

_____

**AFFIRMED**

_____

Appellate Defender David Alexander, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Mark Reynolds Farthing, both of
Columbia, and Solicitor Samuel R. Hubbard, III, of
Lexington, all for Respondent.

_____

**PER CURIAM:** Appellant Filiberto Garcia Campos appeals his conviction for
homicide by child abuse, arguing the trial court erred by admitting certain autopsy
photographs of the victim (Victim) in violation of Rule 403, SCRE. Appellant

claims the probative value of the photographs was substantially outweighed by the danger of unfair prejudice. We affirm.

We find the trial court did not abuse its discretion by admitting the photographs because the probative value was not substantially outweighed by the danger of unfair prejudice. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."); *State v. Gray*, 408 S.C. 601, 608, 759 S.E.2d 160, 164 (Ct. App. 2014) ("The admission of evidence is within the [trial] court's discretion and will not be reversed on appeal absent an abuse of that discretion. A trial court has particularly wide discretion in ruling on Rule 403 objections." (citations omitted)); *State v. Lyles*, 379 S.C. 328, 339, 665 S.E.2d 201, 207 (Ct. App. 2008) ("A trial [court]'s balancing decision under Rule 403 should not be reversed simply because an appellate court believes it would have decided the matter otherwise [due to] a differing view of the highly subjective factors of the probative value or the prejudice presented by the evidence." (citing *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978))); *Gray*, 408 S.C. at 608–09, 759 S.E.2d at 164 ("In exercising its discretion on a Rule 403 objection to the admissibility of autopsy photographs, the trial court 'must balance the [unfair prejudice] of graphic photos against their probative value.'" (quoting *State v. Dial*, 405 S.C. 247, 260, 746 S.E.2d 495, 502 (Ct. App. 2013))); *Dial*, 405 S.C. at 260, 746 S.E.2d at 502 (explaining a trial court "is not required to exclude relevant evidence merely because it is unpleasant or offensive").

The probative value of the photographs in this case was high because they disputed Appellant's defenses, were important for the State to establish multiple elements of the charged crime, and corroborated the testimony of several witnesses. During trial, Appellant attempted to create reasonable doubt by suggesting Victim died from a drug overdose, perpetrated by Tracey Roach,[1] rather than starvation. Appellant also attempted to show Victim's weight loss was rapid and he did not realize Victim was malnourished and in danger. The photographs showed Victim's extremely emaciated condition and aided the jury in determining whether she died from chronic starvation, as the State contended, or from a drug overdose, as Appellant argued. Thus, they disputed Appellant's defense that Victim died from a drug overdose. The photographs were also probative to dispute Appellant's claim he was unaware of Victim's condition. They allowed the jury to view Victim's condition near the time of death and determine whether Appellant's claim

---

[1] Roach was Victim's mother, and prior to Appellant's trial, she pled guilty to homicide by child abuse. The plea court sentenced her to life imprisonment.

regarding his ignorance of her condition was truthful.  Therefore, the photographs were highly probative for disputing Appellant's defenses.

Also, as noted above, the photographs were highly probative for proving Victim's cause of death, which was a material fact and element the State needed to prove. *See* S.C. Code Ann. § 16-3-85(A)(1) (2015) (explaining the defendant's child abuse or neglect must be the cause of the child's death to convict the defendant under section 16-3-85).  As a result, they helped the State meet its burden of proof on a critical issue.

Further, the photographs were important for determining whether Victim's death occurred under circumstances manifesting extreme indifference to human life, which was a material fact and element of the charged crime.  *See id.* (requiring the State to show a victim's death occurred under circumstances manifesting an extreme indifference to human life to convict a defendant for homicide by child abuse).  The photographs were strong evidence showing Victim's condition near the time of death.  Taking the photographs together with the expert testimony that it would have taken weeks or months for Victim to get in such a condition, the State provided strong evidence showing Victim's death occurred under circumstances manifesting an extreme indifference to Victim's life.  The photographs were an important part of the State establishing this element of homicide by child abuse.  Thus, the photographs were highly probative on an issue or material fact the State needed to prove.  *See Gray*, 408 S.C. at 610, 759 S.E.2d at 165 ("[A] court analyzing probative value considers the importance of the evidence and the significance of the issues to which the evidence relates.").

Finally, the photographs corroborated the testimony from several witnesses on significant issues.  *See id.* at 613, 759 S.E.2d at 166–67 ("Photos that corroborate important testimony on issues significant to the case may have very high probative value . . . .").  The experts testified Victim's cause of death was chronic starvation.  Also, several witnesses testified to Victim's extremely emaciated condition at the time of death.  These testimonies went to Victim's cause of death and whether her death occurred under circumstances manifesting an extreme indifference to human life, which were critical issues during trial as explained above.  The photographs corroborated these testimonies.  Further, as discussed above, Appellant disputed these critical issues, which increased the importance of corroboration via the photographs.  As a result, the photographs were highly probative for corroborating testimony from several witnesses on issues of great importance.  Accordingly, the photographs were highly probative because they disputed Appellant's defenses,

were important for the State to establish multiple elements of the charged crime, and corroborated the testimony of several witnesses.

Next, we find the danger of unfair prejudice from the photographs in this case was moderate because, although likely to arouse sympathy, they were not so gruesome or disturbing that they had an undue tendency to lead to a decision on an improper basis and the State introduced them in an objective manner through expert witnesses. *See Gray*, 408 S.C. at 616, 759 S.E.2d at 168 ("Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." (quoting *State v. Gilchrist*, 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct. App. 1998))).

The photographs were not so gruesome, disturbing, or shocking as to have more than a moderate tendency to suggest a decision on an improper basis. *See id*. at 617, 759 S.E.2d at 169 (finding autopsy photographs showing the victim's scalp folded from the back of his head over his face, revealing the surface of his skull, and exposing the brain inside the skull posed a moderate danger of unfair prejudice). We acknowledge the photographs had the capability to produce sympathy for Victim and could pose a danger of unfair prejudice. However, as a mitigating factor, we believe the State admitted most of the photographs in an objective manner. The expert witnesses described the photographs from a medical viewpoint and gave technical explanations of how they showed chronic starvation. *See id*. (explaining "the objective manner in which [the expert] presented the photographs mitigated" the tendency to suggest a decision on an improper basis). Thus, the danger of unfair prejudice was moderate.

To the extent Appellant relies on the alleged comments by the plea court during Roach's guilty plea, the issue is not properly before this Court. Appellant failed to include the transcript of Roach's guilty plea during trial or on appeal. Thus, we have no evidence of exactly what the plea court said, what photographs the plea court viewed, or the context in which it viewed the photographs. *See Beaufort Realty Co. v. Beaufort Cty.*, 346 S.C. 298, 302, 551 S.E.2d 588, 590 (Ct. App. 2001) ("This [C]ourt has repeatedly held that statements of fact appearing only in argument of counsel will not be considered." (quoting *McManus v. Bank of Greenwood*, 171 S.C. 84, 89, 171 S.E. 473, 475 (1933))). Additionally, during the motion in limine, Appellant withdrew his motion to add Roach's guilty plea transcript to the record. *See State v. Bryant*, 372 S.C. 305, 315–16, 642 S.E.2d 582, 588 (2007) (finding appellants cannot argue an issue on appeal that they

conceded during trial).  As a result, any argument regarding the plea court's statements is not properly before this Court.

Based on our findings that the probative value of the photographs was high and the danger of unfair prejudice was moderate, we find the trial court was within its discretion when deciding the probative value was not substantially outweighed by the danger of unfair prejudice under Rule 403.

**AFFIRMED.**[2]

**SHORT, THOMAS, and HILL, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.