# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Xzariera Okevis Gray, Appellant.

Appellate Case No. 2019-001109

---

Appeal From Greenwood County
Frank R. Addy, Jr., Circuit Court Judge

---

Opinion No. 5951
Heard June 9, 2022 – Filed November 23, 2022

---

## AFFIRMED IN PART AND REMANDED

---

Appellate Defenders Susan Barber Hackett and Sarah
Elizabeth Shipe, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, Assistant
Attorney General Michael D. Ross, and Solicitor David
M. Stumbo, all of Columbia, for Respondent.

---

**KONDUROS, J.:** Xzariera Okevis Gray appeals his convictions for murder and
possession of a weapon during the commission of a violent crime. Gray asserts the
trial court erred by (1) denying him immunity from prosecution pursuant to the

Protection of Persons and Property Act (the Act),[1] (2) admitting into evidence a surveillance video of the shooting, and (3) denying his motion for a new trial without a hearing. We remand for the trial court to make specific findings that support its determination of whether Gray is, or is not, entitled to immunity under the Act.

**FACTS**

During the early morning hours of August 26, 2017, officers from the Greenwood Police Department heard a gunshot. Believing the gunshot had come from nearby Gray Street, the officers drove down that street and observed several people outside of Ricky Grant's residence. A woman one street over flagged the officers down and directed them to Demetrius "Meatball" Fueller (Victim). Victim was lying on the ground and unable to communicate with the officers, but they could see he had been shot in the abdomen because he was not wearing a shirt. Paramedics arrived and transported Victim to the hospital, where he went into cardiac arrest. Hospital personnel were unable to resuscitate Victim. An autopsy revealed a single gunshot wound to Victim's abdomen caused him to bleed to death.

In May 2018, a Greenwood County grand jury indicted Gray for murder and possession of a weapon during the commission of a violent crime. Prior to trial, Gray sought immunity from prosecution pursuant to the Act. At the immunity hearing, Gray testified that on August 25, 2017, he was visiting with Grant at Grant's house on Gray Street. Gray recalled that around midnight, he and Grant got into Grant's car to go to a neighborhood nightclub. According to Gray, Victim approached Grant's car and knocked on the window. When Victim learned Grant and Gray were going to the nightclub, he asked to join.

Gray then described an altercation with Victim that had occurred in Grant's yard a couple of weeks earlier. Gray claimed that Victim's brother chased him around a car with a gun. After Gray escaped into Grant's house, Victim's brother left. Shortly after, Victim arrived with the gun. Gray stated that he went back into Grant's house while others in Grant's yard persuaded Victim to leave.

---

[1] *See* S.C. Code Ann. §§ 16-11-410 to -450 (2015).

Gray testified that Grant was aware of the prior incident and asked him if he was comfortable with Victim riding with them to the nightclub. Gray told Grant that it was his car, and Grant let Victim in; the three went to the nightclub together. Once there, Grant and Victim entered the nightclub while Gray remained in the parking lot socializing with friends.

After a few hours, Grant and Gray rode back to Grant's house without Victim, and they continued visiting into the early morning hours of August 26, 2017. Gray testified that Victim returned to Grant's house about an hour later and confronted him about the prior incident. Grant told Victim and Gray to go outside because they were being loud. Gray stated that he went outside and started to walk home but returned to Grant's house so that Grant would drive him home. Gray claimed that Victim followed Gray back into Grant's house, and Grant again told them to go outside.

Gray recalled that when he and Victim returned to the porch, Victim swung at him; however, Gray was inconsistent on whether Victim hit him or missed. Gray testified that he and Victim then began "tussling" in Grant's yard. During the scuffle, Gray claimed that he saw Victim reach for a gun in his waistband. Gray testified that he also reached for the gun and briefly struggled with Victim for control of the weapon.

According to Gray, he gained control of the gun and stumbled backward. Gray claimed that Victim began to charge at him as he stumbled backwards. Gray admitted that he shot Victim once, and Victim then ran away. Gray also testified that he and Victim were the only two people in Grant's yard at the time of the shooting.

To contradict Gray's testimony, the State presented testimony from Grant and another witness, Raymond Kennedy. Grant recalled that Victim hid his gun in the bushes before entering the nightclub, and both Grant and Kennedy testified the argument between Gray and Victim arose over Victim's missing gun rather than their prior altercation. Kennedy also testified that Gray's brother was standing next to Gray when Gray shot Victim.

Additionally, the State introduced a surveillance video that showed the shooting. One of Grant's neighbors, Jeovani Vacquec, testified that he owned and operated the security system that recorded the video. Vacquec stated that he had eight

cameras around his house that all fed into a hard drive that recorded the images and displayed them on a monitor. Vacquec recalled that officers viewed the video from the camera that faced Gray Street and collected the portion that showed the shooting. Vacquec testified that he knew the cameras functioned properly because he checked them regularly. Vacquec explained that the time stamp on the video was incorrect because he did not set the correct date or time when he installed the security system.

Gray objected to the video's admission because the time stamp on the video did not match the alleged time of the incident and Vacquec was not contemporaneously watching his monitor as the shooting occurred. The trial court determined the incorrect time stamp did not affect the video's admissibility because Vacquec explained that he did not set the time when he installed the security system. The trial court also found that Vacquec authenticated the video and admitted it for the hearing.

At the conclusion of the immunity hearing, Gray argued he was entitled to immunity because he was in a place he had a right to be and he satisfied the Act's requirements. While the State conceded Gray was in a place he had a right to be, it argued that whether Gray satisfied the elements of self-defense was a jury question due to the conflicting evidence. The State noted the discrepancy between Gray's testimony that Victim possessed the gun in his waistband and Grant and Kennedy's testimony that the argument between Gray and Victim arose over Victim's missing gun. The State also emphasized that the surveillance video contradicted Gray's testimony because it showed that when Gray shot Victim, a third individual was standing beside him and Victim was not rushing towards him.

The trial court found that Gray was in a place he had a right to be as Grant's invited guest; however, the trial court ruled that Gray failed to prove by a preponderance of the evidence that he was entitled to immunity. The trial court explained that its ruling was "based upon the varying evidence and the open question of whether [Gray was] entitled to a self-defense [jury] instruction . . . ." The trial court also stated that it was "passing upon the credibility of the witnesses who have testified . . . ."

In response, Gray cited *State v. Cervantes-Pavon*[2] and asserted that "just because conflicting evidence as to an immunity issue exists does not automatically require the court to deny immunity. The court must sit as the fact-finder at [t]his hearing, weigh the evidence presented, and reach a conclusion under the Act." The trial court explained that if it "had a hundred percent or very firm belief" in Gray's version of events, "it would be a different outcome, obviously." The trial court elaborated, "[T]o the extent that [Gray's] testimony would have been corroborated by others who were present at the scene, the [c]ourt might be more inclined to say that the defense has met the burden of proving it by the preponderance of the evidence." The trial court concluded that it declined Gray's motion "[i]n light of the conflicting evidence . . . and the open question of whether this is, in fact, a case of self-defense . . . ."

After the immunity hearing, Gray moved in limine to prohibit the State from presenting Vacquec's surveillance video to the jury. Gray reiterated his arguments that the video should not be admitted into evidence because the timestamp was incorrect and Vacquec was not contemporaneously watching his monitor as the shooting occurred. Additionally, Gray argued the video was not admissible under Rule 403, SCRE, because its low quality made it difficult to discern what it showed.

Regarding authentication, the State conceded that no one could testify as to what happened on the video; however, the State argued that Vacquec could testify that his security system recorded the video and the camera faced Gray Street. Regarding Rule 403, SCRE, the State argued that the surveillance video was relevant because it showed the shooting. The State maintained that the quality of the video was a matter of its credibility, which was something for the jury to weigh. The State also contended that the video would not cause confusion and asserted it would help the jury better understand the witnesses' testimony.

The trial court again admitted the surveillance video over Gray's objections. The trial court ruled that the State had sufficiently authenticated the video because Vacquec stated he owned and operated the security system and explained the video's incorrect timestamp. The trial court also acknowledged Gray's Rule 403, SCRE, argument but ruled that the video depicted relevant information.

---

[2] 426 S.C. 442, 451, 827 S.E.2d 564, 569 (2019).

The State began its case-in-chief by calling Vacquec as a witness. Vacquec's testimony was consistent with his immunity hearing testimony, and the surveillance video was published to the jury. The State also presented Grant and Kennedy as witnesses again, and their testimony was consistent with their immunity hearing testimony.

After the State rested, Gray took the stand in his own defense. Gray's testimony was mostly consistent with his immunity hearing testimony, but Gray stated that Victim initially got upset when he returned from the nightclub because Gray and Grant were laughing at him. Gray claimed that Victim then confronted him about their prior altercation. Gray also testified that Victim's punch missed, Victim was wearing a shirt or tank top during their scuffle, and Gray closed his eyes when he fired the gun.

The jury began deliberating at 12:40 p.m. on May 9, 2019. Immediately before the jury exited the courtroom at 12:18 p.m., the trial court informed them that lunch would arrive in about an hour. At 5:43 p.m., the jury sent the trial court a note that contained its third request to watch a portion of the video. The trial court played that portion of the video and then gave the jury a laptop that could play the entire video so they could watch it while deliberating. The note also indicated that some jurors were concerned about their children at home. The trial court allowed the jurors to call their families but directed them to continue their deliberations afterward.

At 8:58 p.m., the trial court received another note requesting another phone call and a smoke break. The note also stated "we are pretty deadlocked at 10:2." The trial court gave the jury a choice between resuming deliberations that evening or reconvening the following Monday.[3] The trial court explained that "[t]here is no set limitation on jury deliberations. However long you deliberate is entirely in your discretion."

The jury continued deliberating. At 10:50 p.m., the jury returned guilty verdicts for both murder and possession of a weapon during the commission of a violent crime. Given the late hour, the trial court delayed Gray's sentencing hearing. On May 14, 2019, the trial court sentenced Gray to consecutive sentences of thirty-five

---

[3] May 9, 2019, was a Thursday, and May 10, 2019, was a state holiday.

years' imprisonment for murder and five years' imprisonment for possession of a weapon during the commission of a violent crime.

On May 23, 2019, Gray filed a motion for a new trial, alleging that the jury was unduly influenced to reach a verdict. Gray noted that the jury deliberated for about ten-and-a-half hours without dinner and informed the trial court that it was "pretty deadlocked at 10:2" two hours before it returned the guilty verdicts. Additionally, Gray presented one juror's Facebook post that stated she "just couldn't leave without a verdict." Gray requested a hearing on the motion so the trial court could ask each juror if they felt undue pressure to reach a verdict.

The trial court denied Gray's motion for a new trial without a hearing. The trial court stated that the jury indicated it was "struggling to reach a verdict" but not deadlocked. The trial court noted that "a lengthy deliberation, standing alon[e], does not warrant conducting an inquiry into the nature of the jury deliberations." Regarding the lack of dinner, the trial court explained that it had ordered the jury a late lunch, and the jury room contained "crackers, snacks, and drinks" the jurors could consume. Additionally, the trial court determined that Gray's requested inquiries were prohibited by Rule 606, SCRE, because they "would cause the jurors to reveal the subject matter of their deliberations." The trial court found that the juror's Facebook post did "not cause the [c]ourt sufficient concern to warrant the drastic step of questioning all twelve . . . jurors." This appeal followed.

**STANDARD OF REVIEW**

"The conduct of a criminal trial is left largely to the sound discretion of the trial judge, who will not be reversed in the absence of a prejudicial abuse of discretion." *State v. Reyes*, 432 S.C. 394, 401, 853 S.E.2d 334, 337 (2020) (quoting *State v. Bryant*, 372 S.C. 305, 312, 642 S.E.2d 582, 586 (2007)). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *Id.* at 401, 853 S.E.2d at 338 (quoting *Bryant*, 372 S.C. at 312, 642 S.E.2d at 586).

**LAW/ANALYSIS**

**I. Immunity under the Protection of Persons and Property Act**

Gray asserts the trial court erred by failing to sit as the fact-finder at his immunity hearing. We agree.[4]

"A claim of immunity under the Act requires a pretrial determination using a preponderance of the evidence standard, which [appellate] court[s] review[] under an abuse of discretion standard of review." *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016) (quoting *State v. Curry*, 406 S.C. 364, 370, 752 S.E.2d 263, 266 (2013)). "[T]he relevant inquiry is . . . whether the accused has proved an entitlement to immunity under the Act by a preponderance of the evidence." *State v. Andrews*, 427 S.C. 178, 181, 830 S.E.2d 12, 13 (2019). "[J]ust because conflicting evidence as to an immunity issue exists does not automatically require the [trial] court to deny immunity; the [trial] court must sit as the fact-finder at this hearing, weigh the evidence presented, and reach a conclusion under the Act." *Cervantes-Pavon*, 426 S.C. at 451, 827 S.E.2d at 569. "[T]he [trial] court, in announcing its ruling, should at least make specific findings on the elements on the record." *State v. Glenn*, 429 S.C. 108, 123, 838 S.E.2d 491, 499 (2019).

Here, the trial court impermissibly abdicated its role as the fact-finder at Gray's immunity hearing. The trial court was required to make specific findings supporting its decision that this court could review on appeal. While the trial court ruled that Gray did not prove by a preponderance of the evidence that he was entitled to immunity, the record contains no specific findings that support that determination. *Compare Andrews*, 427 S.C. at 182, 830 S.E.2d at 14 ("[W]hile the [trial] court may not have set forth every detail of its analysis in the record, the record [wa]s nevertheless adequate for a reviewing court to determine that the [trial] court applied the correct burden of proof and made findings that supported its denial of immunity consistent with a correct application of [our supreme court's] precedent."), *with State v. McCarty*, Opinion No. 28116 (S.C. Sup. Ct. filed Sep. 21, 2022) (Howard Adv. Sh. No. 34 at 38-39) (finding the court of appeals erred in upholding the trial court's denial of immunity because the trial court did not make specific findings that appellate courts could review).[5]

---

[4] Because we remand, we do not address Gray's other contentions as to the immunity issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting appellate courts need not address remaining issues when disposition of an issue is dispositive).

[5] In fairness to the learned trial judge, Gray's immunity hearing occurred before *Andrews* and *McCarty* were published.

The trial court's reasoning for denying Gray immunity reveals that it deferred to the jury rather than sit as the fact-finder at the immunity hearing. The trial court stated it was "passing upon the credibility of the witnesses who have testified" and twice explained that it denied Gray immunity due to the conflicting evidence and the "open question" of whether Gray was entitled to a self-defense jury instruction. The trial court concluded that "such matters are best left to the finders of fact, namely the trial jury." Consequently, the trial court failed to sit as the fact-finder at Gray's immunity hearing. Accordingly, we remand for the trial court to make specific findings that support its determination of whether Gray is, or is not, entitled to immunity under the Act.

## II. Surveillance Video

Gray asserts the trial court erred by admitting into evidence surveillance video of the shooting. We address his two arguments in turn.

## A. Authentication

Gray contends that the State failed to properly authenticate the video. We disagree.

"[E]vidence must be authenticated or identified in order to be admissible." *State v. Brown*, 424 S.C. 479, 488, 818 S.E.2d 735, 740 (2018). A witness with knowledge may authenticate evidence by testifying that "a matter is what it is claimed to be." Rule 901(b)(1), SCRE. "The authentication standard is not high, and a party need not rule out any possibility the evidence is not authentic." *State v. Green*, 427 S.C. 223, 230, 830 S.E.2d 711, 714 (Ct. App. 2019) (citation omitted), *aff'd as modified*, 432 S.C. 97, 851 S.E.2d 440 (2020). "The trial judge acts as the authentication gatekeeper, and a party may open the gate by laying a foundation from which a reasonable juror could find the evidence is what the party claims." *Id.*

The State authenticated the surveillance video with Vacquec's personal knowledge. Vacquec testified that he owned and operated the security system that recorded the video. Vacquec also testified that the camera that recorded the video faced Gray Street. Vacquec explained that the time stamp on the video was incorrect because he did not set the correct date or time when he set up the security system. It is irrelevant that Vacquec was not contemporaneously watching his monitor or at the

scene of the shooting; his personal knowledge sufficiently authenticated the video. Accordingly, we affirm as to this issue.

## B. Rule 403

Gray also contends that the surveillance video's limited probative value was substantially outweighed by the danger of confusing and misleading the jury. We disagree.

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Rule 403, SCRE. "'Probative value' is the measure of the importance of that tendency to the outcome of a case. It is the weight that a piece of relevant evidence will carry in helping the trier of fact decide the issues." *State v. Gray*, 408 S.C. 601, 610, 759 S.E.2d 160, 165 (Ct. App. 2014). "[T]he more essential the evidence, the greater its probative value." *Id.* (alteration in original) (quoting *United States v. Stout*, 509 F.3d 796, 804 (6th Cir. 2007)). "Thus, a court analyzing probative value considers the importance of the evidence and the significance of the issues to which the evidence relates." *Id.* "[T]he burden [is] on the opponent of the evidence to establish [its] inadmissibility." *State v. King*, 424 S.C. 188, 200 n.6, 818 S.E.2d 204, 210 n.6 (2018).

The surveillance video's probative value was not substantially outweighed by the danger of confusing or misleading the jury. The surveillance video was highly probative because it provided an alternative perspective of the shooting that was objective and neutral. Moreover, the surveillance video clearly contradicted some of Gray's testimony. Despite the dark image, the video clearly shows more than two people in and around Grant's yard at the time of the shooting. Therefore, the surveillance video was highly probative.

Additionally, the danger that the surveillance video would have confused the jury was limited. While the quality of the surveillance video made it difficult to discern what happened, the jury was able to replay the video, or portions of it, as many times as it wanted to. Therefore, allowing the jury to view the surveillance video was unlikely to cause confusion, and its probative value outweighed any danger that it would. Accordingly, we affirm as to this issue.

## III. Motion for a New Trial

Gray asserts the trial court erred by denying his motion for a new trial without a hearing. Gray contends he should have been allowed to ask all twelve jurors whether the length of their deliberations, lack of dinner, or their understanding of whether a verdict had to be rendered had an impact on their verdict. We disagree.

A posttrial motion "may, in the discretion of the court, be determined on briefs filed by the parties without oral argument." Rule 29(a), SCRCrimP. "Generally, juror testimony is not allowed regarding the deliberations of the jury or internal influences." *State v. Pittman*, 373 S.C. 527, 553, 647 S.E.2d 144, 157 (2007). However, "a juror may testify . . . whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Rule 606(b), SCRE.

Additionally, "where [an] allegation of improper internal influence potentially affects fundamental fairness, the court may accept juror testimony to ensure due process." *Pittman*, 373 S.C. at 553, 647 S.E.2d at 157. Our supreme court has recognized only two allegations that implicate fundamental fairness: (1) allegations that the jury's verdict was the result of racial or gender intimidation, *Winkler v. State*, 418 S.C. 643, 667-68, 795 S.E.2d 686, 699 (2016) (Hearn, J., concurring), and (2) allegations that the jury participated in premature deliberations, *State v. Aldret*, 333 S.C. 307, 509 S.E.2d 811 (1999). Allegations that jurors misunderstood the law are insufficient to implicate fundamental fairness. *See Pittman*, 373 S.C. at 555, 647 S.E.2d at 158 (2007) ("[A] jury's misapprehension of the law is not enough to impeach a verdict.").

The trial court did not abuse its discretion in denying Gray's motion for a new trial without a hearing. The trial court aptly recognized that Gray's requested inquiries are prohibited by Rule 606(b), SCRE. The juror's Facebook post did not indicate that any extraneous prejudicial information or outside influence had an impact on the jury's deliberations; it also did not indicate that Gray's verdict was reached as a result of racial or gender intimidation or that the jury began deliberating prematurely. Therefore, Gray's requested inquiries would have involved juror testimony about internal influences unrelated to fundamental fairness. Accordingly, we affirm as to this issue.

**CONCLUSION**

The trial court did not abuse its discretion in admitting the surveillance video into evidence and denying Gray's motion for a new trial without a hearing. However, the trial court failed to sit as the fact-finder at Gray's immunity hearing. Accordingly, Gray's case is

**AFFIRMED IN PART AND REMANDED.**

**WILLIAMS, C.J. and VINSON, J., concur.**